IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Pamela DiLeo | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 C 3680 |
| | ) |
| Meijer Stores Limited Partnership, Meijer Great Lakes Limited Partnership, | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff Pamela DiLeo claims that she suffered serious injuries after slipping and falling in a puddle of dirty water, which she alleges accumulated on the floor of a Meijer retail store as a result of defendants' negligence. Specifically, plaintiff claims that defendants were negligent in their placement and maintenance of a floral display within the store and in the training and supervision of employees. Plaintiff's Third Amended Complaint asserts four counts--one for "negligence" and one for "negligent supervision and training"--against each of the two defendants, Meijer Stores Limited Partnership and Meijer Great Lakes Limited Partnership. The negligence claims allege that defendants or their agents breached their duty of care by, among

other things, placing the display in an area of the store that lacked slip-resistant flooring; over-watering plants in the display; and failing to place trays underneath the plants to prevent water from leaking onto the floor. Plaintiff's negligent supervision and training counts challenge the manner in which defendants instructed and supervised their employees to ensure the use of "proper techniques" to water and maintain the floral displays. Before me is defendants' motion for summary judgment on the negligent supervision and training claims.

I previously denied defendants' motion for summary judgment on plaintiff's negligence claims. I concluded that unlike in *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644 (7th Cir. 2014), and *Barrios v. Fashion Gallery*, 255 F. Supp. 3d 728 (N.D. Ill. 2017), for example, where the plaintiffs had offered no evidence at all to establish the origin of the hazardous conditions, a reasonable jury could conclude on the record here that the water in which plaintiff slipped had leaked from a nearby floral display.[1] Defendants argued in their first summary judgment motion

---

[1] In *Zuppardi*, the plaintiff similarly slipped in a puddle of water that had accumulated in the aisle of a store, but she admitted that she did not know "how the water accumulated. There were no trails, tracks, or footprints leading to or from the puddle to any store display or freezer." 770 F.3d at 650. And while the plaintiff argued that a store employee might have spilled water while restocking shelves, because there was "no evidence that a water bottle was found near the location of the spill," and water bottles were stocked "six aisles away from the location where the puddle accumulated," the court concluded that the argument was too

2

that because Masterpiece Flower Company—whom defendants described as a "third-party vendor"—employed the individuals responsible for installing and maintaining the floral display, defendants were not liable for the alleged negligence. It is true that under Illinois law, if a "third person" is responsible for creating a dangerous condition on a landowner's premises, the plaintiff must show that the landowner had actual or constructive notice of the condition. In the classic case, however, including those defendants cite, the "third person" is a customer over whom the defendant exercises no control. *See, e.g., Donoho v. O'Connell's, Inc.*, 148 N.E. 2d 434, 439 (Ill. 1958); *Nieves v. U.S.*, 980 F. Supp. 1295 (N.D. Ill. 1997). Defendants have offered neither argument nor authority to establish that the same notice analysis obtains when the "third person" is an entity such as Masterpiece, which was providing services on defendants' premises for defendants' benefit. To the contrary, *Baker v. Costco Wholesale Corp.*, 2016 IL App (1st)

---

speculative to support a verdict in the plaintiff's favor, and that she needed to do more than "identify a potential source of the spill to avoid summary judgment." *Id*. at 651 (textual alterations and citation omitted). In *Barrios*, the plaintiff was injured when an empty shelf on a store wall fell on her foot. 255 F. Supp. 3d at 729. The plaintiff "testified that she did not notice anything wrong" with the shelf, did not claim that the shelf was loose or broken, and did not describe how it was attached to the wall. *Id*. at 732-33. "At bottom," the court concluded, "the problem with plaintiff's case is that she has asserted no facts, denied none of defendant's factual assertions, and submitted no evidence." *Id*. at 732. On that record, the court held that there was simply no evidence of the defendant's negligence.

3

152736-U, 2016 WL 3202117, at *5 (Ill. App. Ct. Jun. 9, 2016), confirms that a store owner may be liable to its customers for injuries caused by a third-party vendor's in-store activities. Accordingly, I remain unpersuaded that defendants are shielded from liability for plaintiff's injury simply because the employees who watered the plants were not defendants' own employees.[2]

And while plaintiff's claims for negligent supervision and training are indeed more tenuous, they are not so implausible or speculative as to warrant summary judgment *in toto*. Defendants reprise the argument that Masterpiece, not Meijer, was responsible for the floral display, then insist on that basis that they owed no duty to train or supervise the employee responsible for creating the puddle. In this connection, defendants point generally to the "Master Vendor Agreement" between Masterpiece and defendants to argue that defendants "had no contractual right to control Masterpiece." But the Master Vendor Agreement does not address the issue of control over defendants' premises, and I am not persuaded that Masterpiece's contractual obligation to care for and maintain the products it placed in Meijer stores cabins defendants'

---

[2] Defendants also argued that the puddle was an "open and obvious" hazard, but plaintiff is entitled to have a jury decide whether the condition described in the record meets that characterization.

4

liability to its customers for torts committed in the performance of that agreement.[3]

At the end of the day, defendants are responsible for ensuring the safety of their premises. Even assuming that Masterpiece was contractually obligated to defendants to maintain the floral displays, there appears to be no dispute that the floral products were an integral part of defendants' business. A jury could conclude that in exercising reasonable care over their business operations, defendants should have prevented Masterpiece from placing a floral display in an area of the store not equipped with slip-resistant flooring. Nothing in the Master Vendor Agreement prohibits them from doing so.

Finally, defendants argue that even assuming they had a duty to train and/or supervise any of the employees involved in the incident, their failure to do so did not proximately cause plaintiff's injuries. But proximate causation is generally a matter for the fact-finder, and while I agree that certain aspects of plaintiff's negligent supervision and training claims do not

---

[3] Defendants highlight provisions in the "Scan-Based Trading Addendum to Vendor Agreement" captioned, "Vendor's Liability for Acts of its Representatives." This provision, on its face, appears to be directed to Masterpiece's liability *to Meijer* with respect to acts of any "contractor or representative" that Masterpiece may hire to perform its obligations under the Master Vendor Agreement. At all events, defendants do not assert that Masterpiece hired any "contractor or representative" to perform its obligations under the Master Vendor Agreement.

5

raise triable issues on which a jury could find in her favor, I decline to grant summary judgment of these claims in their entirety.[4]

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 27, 2019

---

[4] In particular, plaintiff has offered no evidence to suggest that defendants had a duty to train Masterpiece's employees, nor has she explained how defendants' alleged failure to train any employees with respect to the preservation of surveillance videos, witness statements, and other evidence could have proximately caused her injury. Accordingly, plaintiff is not entitled to present these theories to a jury.