**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION**

PAMELA DILEO            )
                                  )
         Plaintiff,      )
                                  )
         v.           )      Court No. 17-CV-3680
                                  )      Hon. Jeffrey T. Gilbert
MEIJER STORES LIMITED  )
PARTNERSHIP and MEIJER   )
GREAT LAKES LIMITED     )
PARTNERSHIP,          )
                                  )
         Defendants.    )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for resolution of yet another in a series of disputes concerning the parties' respective Federal Rule of Civil Procedure 26(a)(2)(B) disclosures for their expert witnesses.[1] Plaintiff styles her present motion as a Motion to Compel Deposition of Dr. Ronald Ganellen Ph.D. Or In The Alternative Strike and Bar Dr. Ganellen As Expert Witness [ECF No. 262]. Plaintiff wants to depose Dr. Ganellen about the opinions contained in his Rule 26(a)(2)(B) expert witness report that Defendant produced to Plaintiff on October 13, 2020, one day after it was due. *See* Scheduling Order [ECF No. 257]. Plaintiff also wants the Court to strike a second report from Dr. Ganellen that was produced to Plaintiff on November 6, 2020, more than three weeks after it was due and after Plaintiff had deposed Defendant's other expert, Dr. Andrew Zelby. Alternatively, Plaintiff wants the Court to bar Dr. Ganellen from testifying at trial about the opinions contained in his second report. In either case, Plaintiff argues that Dr. Ganellen's second

---

[1] *See, e.g.,* ECF Nos. 117, 137, 172, 191, 202, 230, 231, 232, 233, 257.

report was disclosed too late and the tardiness was neither substantially justified nor harmless within the meaning of Federal Rule of Civil Procedure 37(c).

Defendant says that Dr. Ganellen's first report served on October 13, 2020, was a draft that inadvertently was sent to Plaintiff's counsel and, as such, it is attorney work product that must be returned to Defendant in accordance with Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(2)(5)(B). According to Defendant, the second report from Dr. Ganellen that Defendant produced on November 6, 2020, over three weeks late, is Dr. Ganellen's final report and it replaces the first report tendered on October 13, 2020. Plaintiff argues that any work product protection for the first report was waived by Defendant when it produced that report to Plaintiff without restriction, did not promptly rectify the error, and allowed Plaintiff to reference that report freely and without objection on work product grounds during the deposition of Dr. Zelby on October 29, 2020.

Plaintiff apparently intends to offer into evidence at trial opinion testimony to the effect that Plaintiff, among other things, suffered a traumatic brain injury ("TBI") when she fell at one of Defendant's stores in May 2016. Defendant apparently disagrees there is competent medical evidence that Plaintiff suffered a TBI as a result of her fall, and that is what Dr. Zelby said during his deposition. But during Dr. Zelby's deposition, Plaintiff's counsel directed him to statements in Dr. Ganellen's first report that reference a TBI purportedly suffered by Plaintiff as a result of her fall. *See, e.g.,* Dr. Ganellen's first report dated 10/9/20 [ECF No. 262-2] at 12 ("In addition to the orthopedic injuries Mrs. DiLeo sustained when she fell at a Meijer's store on 5/03/16, she also sustained a concussion/mild TBI."); Transcript of Dr. Zelby's Deposition taken on 10/29/20 [ECF No. 272-1] at 61-62 ("Q: . . . assuming that's his opinion, do you disagree with that as well? A: Yes, sir."). Plaintiff wants to limit Dr. Ganellen's opinions and trial testimony to his first report,

which references a TBI, and asks the Court to strike the tardy second report, which eliminates all references to a TBI.[2]

In its response to Plaintiff's Motion, Defendant also seeks a protective order requiring Plaintiff to return Dr. Ganellen's first report pursuant to Rule 2626(b)(2)(5)(B), but no formal motion requesting that relief was filed. *See* Defendant's Response [ECF No. 268] at 2-3. Defendant presumably also would have argued that its late disclosure of Dr. Ganellen's second report was substantially justified or harmless within the meaning of Rule 37(c) if Defendant had addressed that issue in its response brief, which it did not do.

The only significant difference, according to Plaintiff, between the two reports Defendant produced for Dr. Ganellen, both of which are dated October 9, 2020, is that the first report references a TBI potentially suffered by Plaintiff in her fall at Defendant's store in May 2016 while the second report eliminates all reference to a TBI and refers instead to a concussion.[3] Defendant sent the second report to Plaintiff on November 6, 2020, over three weeks late (25 days, to be precise), together with some supplemental disclosures regarding Dr. Ganellen, but without any express indication that the second report was different than the first report. It was not until November 9, 2020, the day before Dr. Ganellen was scheduled to be deposed, that Defense counsel told Plaintiff's counsel the two reports were different, a fact that Plaintiff's counsel had not yet discovered himself, and that the second report was intended to be Dr. Ganellen's final Rule

---

[2] Plaintiff acknowledges that the first report also was tardy by one day but says "[t]he late nature of the [first report] is not necessarily the issue here." Plaintiff's Reply [ECF No. 271] at 3, n.1. The Court understands Plaintiff to be saying the late delivery of the first report was harmless within the meaning of Rule 37(c) and not a reason to strike that report. The Court agrees.

[3] In the Court's view, the differences between the two reports may be somewhat more nuance than substance as the first report also sometimes refers to Plaintiff's injury simply as a "concussion" or as a "concussion/mild TBI." *See* Dr. Ganellen's first report dated 10/9/20 [ECF No. 262-2] at 12. But the second report does eliminate all references to a TBI and speaks only about a concussion, and Plaintiff argues that is significant in the context of this case. *See* Dr. Ganellen's second report dated 10/9/20 [ECF No. 262-3].

26(a)(2)(B) disclosure. Defendant canceled Dr. Ganellen's deposition pending resolution of this dispute.

I.

The burden is on Defendant to establish that its production of Dr. Ganellen's first report on October 13, 2020, was inadvertent which essentially means that it was unintentional. *Excel Golf Prods. v. MacNeill Eng'g. Co.*, 2012 WL 1570772, at * 2-3 (N.D. Ill. May 3, 2012). As the proponent of the privilege, Defendant also must show that it took reasonable steps to prevent the disclosure and that it promptly took reasonable steps to rectify the error. *Id. See also* Federal Rule of Evidence 502(b). Courts recognize that this requires a fact intensive inquiry into the circumstances under which the disclosure was made, the steps taken to avoid the disclosure, and the steps taken to promptly rectify it. "Determining whether a party took reasonable steps to prevent disclosure and to rectify the error requires considering a variety of factors including the procedures followed to avoid producing privileged material, the volume and timing of the production, and overriding issues of fairness." *Excel Golf Prods. v. MacNeill Eng'g. Co.*, 2012 WL 1570772, at *3, *citing Sidney I. v. Focused Retail Property I, LLC,* 274 F.R.D. 212, 215 (N.D. Ill. 2011). "The producing party must offer specific facts and details to show that the procedures were reasonable." *Excel Golf Prods. v. MacNeill Eng'g. Co.*, 2012 WL 1570772, at *3.

The Court finds that Defendant has not met its burden of proof to show that its disclosure of Dr. Ganellen's first report was inadvertent and, even if it was, that Defendant took reasonable steps to protect against the asserted inadvertent disclosure and that it promptly took reasonable steps to rectify the error. Defendant's factual showing with respect to these Federal Rule of Evidence 502(b) predicate factors is meager, if that. Defendant simply says that an administrative assistant in Defendant's law firm failed to save Dr. Ganellen's second report in the firm's system

4

on October 13, 2020, and "inadvertently" sent the first report to Plaintiff's counsel on that date. In explaining the supposed mix-up, Defendant says its law firm had to close early that day because one of its employees tested positive for Covid-19. Defendant's counsel had contact with that employee, so she had to self-quarantine and get tested for the virus instead of coming into the office to personally handle the production of Dr. Ganellen's faxed report as she had planned to do. *See* Defendant's Response [ECF No. 268] at 1-2.

Plaintiff points out, correctly given the fact intensive nature of the inquiry, that no affidavits averring to these facts have been provided from counsel, the administrative assistant, or Dr. Ganellen. The first report is not titled as a "draft." Nor is there anything from Dr. Ganellen to indicate that his first report was tendered as a "draft" when it was sent to Defendant's counsel. The first report, however, does display a fax trailer of October 12, 2020, and the second report bears a fax trailer of October 13, 2020. Both reports are dated October 9. 2020. *See* Letters dated 10/9/20 [ECF Nos. 262-2 and 262-3]. That would seem to suggest the second report was meant to replace the first report but there is nothing else in the record to establish that fact. There also is no indication what happened between October 9, 2020 and October 13, 2020, when the first report was produced to Plaintiff; what happened between October 13 and November 6, 2020, when Defendant sent Dr. Ganellen's second report to Plaintiff without explanation; or between November 6 and November 9, 2020, when Defendant's counsel first alerted Plaintiff's counsel that the second report was different than the first report.

More importantly, no facts are provided about the steps Defendant took to prevent the inadvertent disclosure of Dr. Ganellen's first report assuming for the sake of argument here that it was inadvertent. There is no explanation as to what, if any, steps were taken by Defendant's counsel to ensure that Dr. Ganellen's updated report was sent to Plaintiff's counsel. If the

5

elimination of all reference to a TBI between the first and second reports was a material change, one would think more care would have been taken to make sure that the final version of Dr. Ganellen's opinion was produced to Plaintiff instead of an earlier version. Although Defendant puts the blame for the mistake on an administrative assistant who purportedly saved the wrong version of Dr. Ganellen's report in the law firm's system, Defendant's lead trial counsel was copied on the cover email the assistant sent to Plaintiff's counsel at 9:51 a.m. on October 13, 2020. *See* Email dated 10/13/20 [ECF No. 271-3]. A PDF version of Dr. Ganellen's report was attached to that email. *Id.* It is difficult to see how the purported Covid-19 office emergency prevented counsel from promptly reviewing what had been produced to Plaintiff and determining that it was an earlier version of his Rule 26(a)(2)(B) disclosure. If that had been done, then the mistake easily could have been corrected before Dr. Zelby's deposition on October 29, 2020.

In addition, with respect to the reasonableness of the steps taken to rectify the error, Defendant waited at least three days after it says it discovered that Dr. Ganellen's first report had been produced to Plaintiff in error before asking Plaintiff's counsel to return it. Defendant sent Plaintiff a "rider" with additional information about Dr. Ganellen on November 6, 2020, along with Dr. Ganellen's second report but with no indication that report was different than the previously produced report. In an email to Plaintiff's counsel on November 9, 2020, three days later, Defendant's counsel said she did not realize "until I was preparing the Rider response" that Dr. Ganellen's first report inadvertently had been sent to Plaintiff's counsel on October 13, 2020. *See* Email dated 11/9/20 [Exhibit 271-1].[4] That means that Defendant's counsel realized on or before November 6, 2020, that Dr. Genellen's first report had been produced to Plaintiff but she did not disclose that fact or ask Plaintiff's counsel to return it until November 9, 2020, at least

---

[4] *See also* Defendant's Response [ECF No. 268] at 2 ("This error was discovered when Defense Counsel was subsequently preparing a deposition rider response for Dr. Ganellen.").

three days after counsel realized the error. The Court strains to see how waiting three or more days to take steps to correct an error – the mistaken production of attorney work product – that occurred almost a month earlier is reasonable under the circumstances.

Plaintiff's counsel also argues that during the deposition of Defendant's other expert, Dr. Zelby, on October 29, 2020, two weeks after the asserted inadvertent production of Dr. Ganellen's first report, Defendant's counsel did not object on work product grounds when Plaintiff's counsel questioned Dr. Zelby about Dr. Ganellen's first report and quoted Dr. Ganellen's references to a TBI in that report. Plaintiff argues that any work product protection that could have been afforded to the first report was waived by this failure to raise the work product objection at that time. The Court agrees that, at the very least, Plaintiff's counsel's use of Dr. Ganellen's first report during Dr. Zelby's deposition should have caused a light to go on for Defendant that Plaintiff was not reading from Dr. Ganellen's final Rule 26(a)(2)(B) disclosure but, rather, from a different version that contained the TBI language. Defendant's failure to raise a work product objection at that time, therefore, is at a minimum relevant to the issue of whether Defendant took reasonable steps to rectify the error once it was discovered within the meaning of Federal Rule of Evidence 502(b).[5]

---

[5] Defendant's failure to raise a work product objection during Dr. Zelby's deposition when Plaintiff's counsel questioned him about Dr. Genellen's first report arguably would have been a sufficient basis for a finding that Defendant waived work product protection for Dr. Genellen's first report prior to the enactment of Federal Rule of Evidence 502(b). While an argument might have been made prior to the September 1, 2008 effective date of Rule 502(b) that a truly harmless mistake was not a reason to strip a party of a privilege, it also is true that courts even before Rule 502(b) came into being had "little sympathy" when there was no way to prevent or mitigate harm to an opposing party in litigation absent a finding of waiver even in the context of an inadvertent disclosure of privileged or attorney work product material. *See Simon Property Group L.P. v mySimon, Inc.,* 194 F.R.D. 644, 646-50 (S.D. Ind. 2000). Plaintiff quotes extensively from former District Judge, now Circuit Judge, Hamilton's opinion in *Simon Property* in her reply brief [ECF No. 271] (no cases or federal rules were cited in Plaintiff's Motion [ECF No. 262]) without mentioning that it was decided prior to the enactment of Rule 502(b) which is decidedly more relevant to the issue now before the Court. Moreover, as discussed in the next section of this Memorandum Opinion, the circumstances of Defendant's production of Dr. Genellen's first report, the failure to take reasonable steps to prevent the error and to timely correct it, as well as the failure to raise a work product objection during Dr. Zelby's deposition were not harmless in the context of this case.

For all these reasons, the Court agrees with Plaintiff that Defendant has not met its burden to show its production of Dr. Ganellen's first report on October 13, 2020, was inadvertent and, even if it was, that Defendant took reasonable steps to avoid that asserted inadvertent disclosure, and took reasonable steps to rectify the asserted error once it was discovered within the meaning of Federal Rule of Evidence 502(b). The Court also agrees that Defendant's inability to satisfy its burden under Federal Rule of Evidence 502(b) results in a waiver of any work product protection that otherwise might have been afforded to the first report. Therefore, Defendant is not entitled to have Plaintiff return Dr. Ganellen's first report and act as if it was never produced. For these reasons and for the avoidance of doubt, the Court also denies Defendant's request for a protective order mandating that Plaintiff return to Defendant Dr. Ganellen's first report. *See* Defendant's Response [ECF No. 268] at 2-3.

## II.

The Court also agrees with Plaintiff that Defendant's tardy disclosure of Dr. Ganellen's second report was not substantially justified or harmless within the meaning of Federal Rule of Civil Procedure 37(c), and that report therefore is stricken pursuant to that Rule. *See also* Rule 37(b)(2)(A)(ii). The second report was tendered to Plaintiff 25 days late without any explanation that it was different than the first report. It was produced only after Plaintiff's counsel questioned Dr. Zelby about references to a TBI in Dr. Ganellen's first report. The late disclosure of the second report is not harmless because Plaintiff's counsel already had deposed Dr. Zelby and elicited testimony from him that would make no sense if Dr. Ganellen is now allowed to submit a new and different expert report. Plaintiff's counsel reasonably assumed that Dr. Ganellen's first report, which Defendant delivered to Plaintiff well-before Dr. Zelby's deposition, was his final expert report. Plaintiff used statements in that report to point out what Plaintiff may plan to argue create

a conflict between the opinions of Defendant's two expert witnesses, or at least support the opinion of one of Plaintiff's own experts about her injury, among other things.

There is no reason to allow Defendant to un-ring that bell now on this record. It is not just the purported "gotcha" aspect of Plaintiff's examination of Dr. Zelby or her planned examination of Dr. Ganellen, if that is a proper characterization of what Plaintiff did or plans to do, that is at issue here. There also is the whipsaw unfairness of Plaintiff being given a different expert report for Dr. Ganellen that eliminates all references to a TBI and Plaintiff's need to change course and theory in examining both Dr. Zelby and Dr. Ganellen at trial based on that tardily delivered new report if it is permitted to stand. At a minimum, Defendant's production of Dr. Ganellen's first report as his operative expert report and the unreasonable delay in producing his second report, and then in notifying Plaintiff of the difference between the two reports, caused Plaintiff to waste a lot of time and effort.

In addition, Plaintiff argues that the differences between the two reports are important in the context of this case such that Plaintiff would suffer real harm or prejudice if the Court were to allow Defendant to change Dr. Genellen's expert report and his contained opinion weeks after the first report was delivered and after it was used at Dr. Zelby's deposition. Defendant does not seem to disagree that there are important differences between the two reports. Even if the differences are more nuance than substance as the Court ruminated earlier in this Memorandum Opinion (see footnote 3, *supra*), the Court recognizes that nuance and gradations in medical terminology, diagnoses, and conditions can be important when speaking about the extent of Plaintiff's injuries from her fall at Defendant's store.

Moreover, the late production of the second report also is not substantially justified for all the reasons the Court explained above in its discussion of why the circumstances surrounding the

9

disclosure of Dr. Ganellen's first report do not satisfy the requirements of Federal Rule of Evidence 502(b). Defendant has not provided a logical and supported bridge between its mistaken disclosure of Dr. Ganellen's first report and its subsequent disclosure of his second report weeks later that amounts to a substantial justification for its untimely Rule 26(a)(2)(B) disclosure. Defendant had plenty of opportunity to discover that it had produced a different version of Dr. Genellen's expert report than it intended to produce and rectify that error before Plaintiff used the first report during Dr. Zelby's deposition, but it did not do so. The record does not support a substantial justification argument and, as the Court noted above, Defendant did not even mention Rule 37 in its response to Plaintiff's Motion.

Finally, this is not a situation in which a lesser sanction than striking Dr. Ganellen's tardy second report is appropriate. There is real harm or prejudice to Plaintiff if Defendant is to be allowed to withdraw Dr. Genellen's first report and substitute his second report produced to Plaintiff after Dr. Zelby's deposition for all the reasons discussed above. Defendant suggests no means for Plaintiff to cure that prejudice and the Court also sees no alternative other than striking the second report. Although trial is not on the horizon and Defendant is not alleged to have acted in bad faith, those considerations are not as relevant under these circumstances as the other factors the Court is weighing in the balance. *See Duff v. Grandberry,* 2017 WL 1375539, at \*2 (N.D. Ill. April 17, 2017) ("A district court's discretion under Rules 26(a) and 37(c)(1) is guided by four factors: '(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'") (citations omitted). In the exercise of its discretion, therefore, the Court does not see any alternative to striking Dr. Genellen's second report under the facts of this case.

III.

For all these reasons, Plaintiff is entitled to depose Dr. Ganellen about the opinion(s) expressed in his first report, assuming Defendant still intends to use him as a Rule 26(a)(2)(B) expert. Because the Court is granting Plaintiff's Motion in that she will be allowed to depose Dr. Ganellen about his first report, and striking Dr. Ganellen's second report under Rule 37(c), there is no need for the Court to rule on Plaintiff's alternative request that Dr. Ganellen be barred from testifying at trial. For all practical purposes, Dr. Ganellen's second report is out of this case as a purported Rule 26(a)(2)(B) disclosure as a result of this Court's ruling today. How that will affect what Dr. Ganellen can testify to at trial ultimately is the province of the trial judge.

Accordingly, Plaintiff's Motion to Compel Deposition of Dr. Ronald Ganellen Ph.D. Or In The Alternative Strike and Bar Dr. Ganellen As Expert Witness [ECF No. 262] is granted in part and denied in part as moot. Defendant's request for a protective order mandating the return of Dr. Ganellen's first report also is denied. The parties shall file a joint report by April 19, 2021, with a date by which Dr. Ganellen will be deposed, and a date by which Plaintiff must disclose any rebuttal expert because the date previously set by the Court for Plaintiff to do so [ECF No. 257] has passed.

It is so ordered.

Dated: April 5, 2021

_____

Jeffrey T. Gilbert
United States Magistrate Judge